Each side has ten minutes. Good morning. Good morning, Your Honors. Dennis Bromberg for Plaintiff Appellant Tammy Wenzel. I'd like to start, Your Honor, with first dealing with the new and material evidence issue here, because I feel that it's a very significant issue. If we look back on the record, clearly I think I have responsibility for not getting that record in a more timely fashion. You're talking about Dr. Drucker? I'm talking about Dr. Drucker's chart note, Your Honor. The ALJ said toward the end of the case, do you want me to close the record now or do you have anything else to submit? And I think counsel said no. Correct. We had been trying to get records from Dr. Drucker, and I must admit the reason I said no was based on the evidence that we had in the record. If you say no, you say no. I mean, isn't that? Right. And I did say no, and my reason for saying no was based on the evidence in the record at that time. And if we look at that evidence, Your Honor, we had a psychiatric CE done by Dr. Michael, who found the claimant did not have sufficient mental residual functional capacity to engage in any kind of work activity at that time. The commissioner's response to Dr. Michael's brief was that basically anybody who goes in in front of a psychiatrist and avoids eye contact and cries is going to be able to receive benefits. They kind of leave out the part where my claimant had a severe spinal injury. As well, I think, Your Honor, that that statement is rather demeaning, not only to my client but to all psychiatrists. I mean, I don't think the government would go ahead and give people psychiatrists the ease if they didn't believe the psychiatrist has the ability to tell the fakers from the non-fakers. That being said, they went ahead and chose the state agency psychiatrist who never had an opportunity to examine the claimant, and Dr. Michael did have that opportunity, Your Honor. As far as the treating, and that was the only psychiatric evidence in the file at that time, as far as the treating, Dr., Your Honor, Dr. Miller had been Ms. Wenzel's main treating physician since her injury, and he had her quite limited, in fact, limited her to basically what would be sedentary work with some significant impairments in being able to use her hands. The government rejected that, although there was all kinds of treatment from Dr. Miller, by accepting a one-time snapshot consultative examination from Dr. Bajwa, who, as far as I can tell from reading his notes, it looks like he had a chance to look at two MRIs and no treating notes that were provided from any of Ms. Wenzel's other treating physicians. Getting back to the issue, Your Honor, of the evidence, the Dr. Drucker's notes, there's two questions. One is whether or not they're relevant in terms of what they say, and the government indicates, well, they don't really show that she would be mentally disabled, but the other issue is whether or not they would prove her credibility as they've been used as a vehicle to show, well, they weren't in the records, so she wasn't credible. I just don't see in this case, Your Honor, where there was any clear and convincing evidence to choose Dr. Bajwa's one-time CE over Dr. Miller's, or, in fact, to discredit Dr. Michael's consultative CE. Now, I think if you look at Dr. Drucker's notes, for their materiality, if nothing else, it goes to credibility of the claimant if those were to be let in. I have nothing further unless the Court has questions. I don't have any questions. Thank you, Mr. Brumberg. Thank you. Good morning. Good morning, Your Honor. May it please the Court, my name is Odell Bruce, and I represent the Commissioner. Your Honors, I will take my argument in the sequence that the issues were presented by opposing counsel. First, I'd just like to say that it is essentially the plaintiff's responsibility under the Social Security Act and under its pertinent regulations to prove that she is disabled. This plaintiff has not proved a disability. Counsel, my primary concern, and I'd appreciate your directing your comments to this, is whether the ALJ gave sufficient reasons for rejecting the opinions of Dr. Michael and Dr. Miller, who both supported the plaintiff's case and her inability to work. Certainly, Your Honor. The ALJ appropriately based his residual functional capacity finding on the opinion of Dr. Ahsan Bajwa, a board-certified neurologist. The ALJ, Dr. Miller, as pointed out by opposing counsel, did treat the plaintiff for some period of time, but his treatment essentially involved noting her complaints, monitoring her medications, and whether or not those medications caused an adverse effect on the plaintiff. When Dr. Miller, after having treated the plaintiff for a period of time and then upon request from opposing counsel, provided a residual functional capacity assessment, he provided no diagnostic testing, no clinical findings. There was no objective finding included among Dr. Miller's assessment to support his finding that this individual could only do sedentary work, whereas Dr. Bajwa did indeed engage in those kinds of diagnostic tests, as he points out in his RFC, to support his finding. And the ALJ appropriately rejected the opinion of Dr. Miller. I would point out that an examining physician's opinion is given, is accorded the status of substantial evidence when he provides those kinds of clinical findings and objective findings. Then why didn't Dr. Michael's opinion get accepted as an examining psychiatrist and neurologist, I think, as well, who did an examination and went through all the same drill? Essentially, Your Honor, I would argue that Dr. Michelle's, or Dr. Michael, I'm not sure how his name is pronounced, his opinion was conclusory, and there were very few clinical findings to support his conclusion, and it was also contradicted by a statement. Excuse me, what kind of a clinical finding would you expect, or did the ALJ expect, from a psychiatrist who's looking for depression? What sort of clinical findings would there be other than the kinds of behavioral things that were discussed in that report? I think we need to look at exactly what was in the report, Your Honor, to answer that question. And for the most part, essentially, Dr. Michelle's observations were that this plaintiff presented normal behavior. She provided good history. She was oriented to time and place. She was able to ---- All that is consistent with depression, as far as I understand. I didn't say she was disoriented. I said she was oriented. I understand that. And I'm saying, what evidence is there in the record that would suggest that being oriented and well-groomed and the other normal things is inconsistent with being depressed? Your Honor, I don't ---- I would argue that there is no evidence other than the fact that she presented a sometimes tearful affect and that she appeared, her mood was, I would say, the doctor said her mood was depressed, it was then contradicted by his other findings. That's what I'm asking. What medical evidence is there? What is there other than the ALJ speculating about how depressed people act to say that the other things are inconsistent with being depressed? The examining physician, the state ---- I'm sorry, the state physician who reviewed Dr. Michelle's findings found exactly the opposite, that this person was fine. But he never met her. He never met her. That was exactly my concern. He just looked at the papers. But, Your Honor, I would suggest that the findings are consistent with the evidence. Even though Dr. Murillo had not met the patient personally, her findings were consistent with the evidence that Dr. Murillo, that Dr. Michelle's findings presented, as well as the evidence that was presented by Dr. Bourgeois, who did examine the ---- That's a little bit like having us be the jury all over again and say, well, never mind about all that demeanor stuff. We're just ---- we can just decide that the jury should have found somebody not guilty or guilty. I mean, I guess it would have to go the other way. Because we can read the paperwork, and, you know, why would it matter to actually meet the witnesses? I mean, isn't that really what ---- why the rule has developed that the person who actually meets the patient is entitled to more weight in their opinion than the person who just looks at the papers? Your Honor, I would argue that in a case where the examining physician's findings are conclusory and not necessarily supported by his or her observations, and contradicted by a state agency reviewing physician whose evidence is consistent and who ---- and with the independent clinical findings, it does serve as substantial evidence. And the administrative law judge is appropriately ---- can appropriately rely on that evidence from that non-examining physician. Plaintiff's counsel also spent a lot of time talking about the issue of remand and the issue of new evidence. We would argue, Your Honor, that there is no good cause for this new evidence to be considered by the court. The judge, the administrative law judge, did in fact ask counsel at the hearing if counsel would like anything added. Counsel said no. At the end of the hearing, counsel argued that the evidence submitted before the administrative law judge was the evidence upon which the administrative law judge should make his finding. In that case, what more is there that the administrative law judge could have done? It is the plaintiff's responsibility to provide the evidence necessary for the administrative law judge to make his or her decision. I would also further argue that a review of Dr. Drucker's treatment notes would show that this evidence is not material, and it would not tend to change the mind of the commissioner. At page 316 of the plaintiff's excerpts of record, Dr. Drucker provided a mental status examination, in my opinion, that in most ways supports the position of the administrative law judge, essentially finding that in most aspects this plaintiff was normal and did not demonstrate a mental impairment. So for those reasons, Your Honor, we would argue that this record, that the decision of the administrative law judge is appropriately based on the substantial evidence of record, and there is no legal error. Thank you. Thank you, Mr. Grooms. Mr. Bromberg, do you have anything you wanted to add? Any rebuttal? Just to clear up some factual issues, Dr. Bajwa, who was the consulting examiner, Your Honor, he did not do any diagnostic testing. They don't do it. They get some records that are sent to them, or else the claimant brings them to them. So the two MRIs that he makes reference to in his report are not ones that he was able to order or direct. Those are ones that came either from ---- If the administration is arguing that the treating physician didn't order them and the administration did order them, I think all of the diagnostic testings were ordered by the claimant's treating physicians, and I think if you go through the record, you'll find that's where they came from. That's all I have. Thank you, Mr. Bromberg. Mr. Grooms, thank you. The case is disbarred, Your Honor. We'll stand at recess for 10 minutes.
judges: Hall, Silverman, Graber